Good morning. I'm Jennifer Coffin and I'm here today on behalf of Antwon Broome. I'd like to reserve 3 minutes of my time. Thank you. Mr. Broome was sentenced to 190 months for his conviction for one count of possession with intent to distribute methamphetamine. That sentence was at the low end of the career offender guideline range, but it was almost 6 years longer than the sentence that Mr. Broome proposed. Based on what we know, the sentence that Mr. Broome proposed, which was 10 years, is sufficient to meet the need to At bottom, Mr. Broome's claim is that he's entitled to be sentenced based on a full account of what the Commission has told us and reported to courts and the Congress about offenders just like him. In the absence of that information, the District Court procedurally erred when it found that a career offender guideline sentence would serve the purpose of avoiding unwarranted disparity and protecting the public from future crime. The court sentenced your client within the guidelines, right? Yes. So it's kind of hard to say that the court erred in some fashion, right? Well, for Mr. Broome, it is easy to make that claim if it's cast as a procedural error. And the procedural error in this case is that when the court was analyzing two of the factors that the court analyzes under Section 3553A, that would be the need to avoid unwarranted disparity and the need to protect the public, the District Court relied on information, it appears from its analysis, that was in fact, I would say factually mistaken. Not through any fault of the court, but the court did not have the full account of what in fact is the empirical evidence related to offenders like Mr. Broome. The court depended upon some language in the Sentencing Guidelines Commission, right? It is not entirely clear what the court relied on, but for example, when we're talking about unwarranted disparity, the District Court said at page 405 of the transcript, the District Court said that a guideline sentence will address disparity, any disparity, with respect to similarly situated offenders. When in fact, 30 quarters of offenders like Mr. Broome, who are similarly situated to him in the sense that they have a prior violent offense, are sentenced on average one-third of the distance below the bottom of the range, which in Mr. Broome's case would have been almost the sentence that he proposed. But aren't a majority of those defendants sentenced pursuant to a motion for, you know, a downward departure or support of such a motion by the government? There's been substantial assistance or some cooperation presumably by the defendant and the government supports a downward variance or even a departure. It is true that a substantial number of those sentences below the range are sponsored by the government. However, even when you remove those departures from the calculus and you look at the sentences that remain and you look at the number of sentences or times in which the District Court nevertheless, despite the absence of a government departure and perhaps even over the opposition of the government, still sentences below the range, that happens in 60% of the cases. That's a majority of the cases. So to sentence Mr. Broome within the range is to actually sentence him to an unusual sentence. And given the record here, it is not clear why the District Court would have concluded that Mr. Broome is an unusual career offender, given the many worst... But he was a career offender, right? And that was not disputed at all? Not at all. It is not disputed that he qualifies as a career offender under the guideline definitions. Generally, there is a presumption if the court sentences a person within the guidelines, right? There is a... Which the court did. Yes. That has to do with if I were only challenging the substantive reasonableness of Mr. Broome's sentence, then the presumption would come into play. And that's a separate question from whether the District Court, in the process of assessing these two factors, appears to have relied on an incomplete understanding of the actual reality with respect to disparity with career offenders, with priors like his, and also with the need to protect the public. Where in the record does it show that the district judge relied on these so-called misstatements or errors? As I read the colloquy, yeah, the government made some reference to this sentencing report, but the district judge, he went through all the 3553A factors, talked about the extensive criminal history this defendant had, said you didn't give your attorney much to work with, you have had all these problems. And yeah, a lot of these convictions were when you were very young, but you've had some criminal issues even in your very late 30s, and you don't seem to be getting much better. I mean, the judge just went through one factor after another, and I didn't see that he relied on specifically or expressly on any of that commission report information. It is true, Judge Cole, that the judge did not explicitly refer to the career offender report. However, at more than one juncture in the sentencing proceedings, the government explicitly referenced the commission's report on career offenders to refute the notion that a career offender sentence would create unwarranted disparity and with respect to public protection. So when the district court got to the point during the analysis of the factors, when he said, talked about disparity, the judge specifically said a guideline sentence will address disparity with similarly situated defendants. That, although it does not explicitly reference what the government was alluding to, it does sound as though the court may have actually been thinking about the things that the government was saying about violent offenders, their risk of recidivism, and the idea that the commission has said, based on sentencing outcomes, that these offenders maybe should not be the ones, or I think that the government said definitely should be career offenders. So given the entire context of the proceedings, and given the due process right that Mr. Broome has, to know, to have the perception that he's been sentenced fairly and based on a full accounting of what this evidence really says, it would make sense for us to send it back to the district court just to know for sure that if the district court knew about all this information, it would still come to the same conclusion. It would explain why Mr. Broome should receive the unusual career offender sentence. It should explain why Mr. Broome, even though his prior violent offenses do not actually predict a higher risk of recidivism, in his particular case, why he should still be of the view that a career offender sentence is necessary to protect the public. Do you have a case that says that if the court sentences somebody within the range of a career offender, that there's no presumption there? There is no case that says there's not a presumption of reasonableness when we're talking about whether the sentence is substantively reasonable. There is a presumption. So we know there's a presumption if it's within the regular guidelines, so why wouldn't there be a presumption within the career offender guidelines? Mr. Broome's position, if we're going to talk about whether the sentence is substantively reasonable, which is a separate question from whether there's a procedural error. Are you just coming up on appeal for the procedural? No, Your Honor. For the substantive. Mr. Broome also says that the sentence is substantively unreasonable, and his position about the presumption is that in this case, he has, in fact, rebutted the presumption. And he's rebutted the presumption because he has shown that there is not, in fact, the double determination that Rita says happens when a district court agrees with the guideline range. The reason there isn't a double determination is that the Sentencing Commission itself has put out the most it knows about career offenders like Mr. Broome. And it has said that, in fact, a career offender sentence is greater than necessary in the mine run case to serve the need to avoid unwarranted disparity and to protect the public. So once he has shown that there isn't that double determination, then the very purpose of the rebuttable presumption sort of evaporates. And now we're at a place where we're saying, well, is this sentence too long? And in this case, because we don't know for sure if the court understood the actual facts about offenders like Mr. Broome. And the most important fact I guess I'd like to point out, because there's a lot of statistics lying around, is that taking away the career offender guideline and just looking at his guideline range as a drug offender, his risk of committing crimes in the future is actually already perfectly measured by his criminal history category, which is 6 already. So had the district court known that fact, then it might have decided that the full career offender range was not necessary. And then, in fact, the sentence that Mr. Broome proposed, which was slightly several months above the bottom of the ordinary range, would capture the seriousness, the additional seriousness of the offense the judge clearly thought. Mr. Broome's position is not that none of those other factors matter or that it might not be weighed a little bit differently. It's that the district court was without the full account of what we know as a matter of human knowledge in the criminal justice system. What's your best case from the Sixth Circuit that you're relying upon for your position? There are numerous, if not legions, cases. And the very best one must be a really good one for you. Well, it's Rita, which is a Supreme Court case, which says if we're talking about substantive unreasonableness, it says that the reason why we have a presumption is because of the double determination. And in this case, there is no double determination. When it comes to procedure, there really are a legion of Sixth Circuit cases that reverse and remand when the district court relies on information that is either unreliable or mistaken. And that would be United States v. Adams would be our best case in that regard. Well, talking about cases, you argue that by imposing a within-guidelines sentence, the district court created a sentencing disparity. Exactly. What's your best case to support that proposition? That the judge created Kimbrough, I would say. Kimbrough? Because in Kimbrough, the Supreme Court said that district courts must take into account disparity. And then this court in Stock said that national statistics are the starting point for deciding whether there is unwarranted disparity by the sentence being imposed. And the judge didn't have that information or it appears didn't have the full information about offenders like Mr. Broome who have violent offenses in his past. It does appear that the judge was listening to the fact that he has violent prior offenses. Did the defense counsel present some kind of statistics on that for the court? Mr. Broome's attorney did recite that the growing trend in district courts is that over the years, district courts have been sentencing below the guideline range in an increasing number of cases. And that is correct. So are you saying that every time the court doesn't do that, then it's in error? No, I am not saying that. I'm saying in these particular circumstances, given the entire context of the proceedings and the invocation of the career offender report, the district court's analysis in that regard was incomplete. Had the district court understood what the actual facts are about career offenders today, and in particular career offenders with violent predicates like Mr. Broome, if it had understood that only a quarter of those offenders actually get a sentence within the range, then it would have had to explain why Mr. Broome belongs in that unusual category. That's his position. Okay, your time is expired. Ms. Johnson, thank you very much. Good morning. I'm Tara Bates of the United States, and the district court did not abuse its discretion in sentencing Mr. Broome to 190 months imprisonment based on the seriousness of his offense conduct and based on his personal history and characteristics, including an extensive criminal history that involved 12 offenses that could have been predicate offenses for the career offender, four on different dates. So at the minimum, he had twice as many predicate offenses for the career offender guideline range. He also had violent offenses, two attempted first-degree attempted murders, five aggravated robberies, three felony drug trafficking offenses. He had violated his parole. He had violated his probation. He had assaultive offenses, not just as a 19-year-old, but even as a 37, 38-year-old. He made police officers in danger every time he had the opportunity to do so. This particular offense didn't just involve possession of methamphetamine, for which he was convicted, but also of selling heroin, of possessing fentanyl, which is an extremely dangerous drug. He had two loaded firearms. He conducted some of his drug deals in places where children would be likely to be present. All of these factors the district court considered in determining an appropriate individualized sentence for Mr. Broome. The district court did not rely on any misleading or false statements. What the prosecutor said was that the career offender directive is best focused on those offenses, those offenders who have violent histories, which includes the defendant. The defense counsel wants you to believe that the district court was unaware of the commission's report, but what was cited in the filings, which we know the district court read prior to sentencing, was a statistic that was taken directly from that report. It wasn't false, and it wasn't taken out of context to the point where it was misleading. It simply said that offenders like the defendant, who is a career offender with prior violent convictions, is more likely to re-offend and is more deserving of a sentence within the career offender guideline. What's the best case that you're relying upon to show the validity of this sentence? I would say that United States v. Smith, which is cited in our briefings, is probably most on point, but I would discuss Rita because Rita does say that there is a presumption of reasonableness that's based partially on an agreeance between the sentencing commission and the guidelines and the district court's determination that this individual meets that same necessary sentence. Rita talks about not just the length of the sentence, but also the factors that the district court determined in making that decision. It's clear, as Judge Cole noted, that the district court in this case went through the 3553A factors. He considered not just the defendant's criminal history, not just the fact that he is a career offender, but also what type of career offender he is. I think the defendant's largest fallacy is that this defendant is a run-of-the-mill, typical career offender. He's not. He is far from being a typical career offender. It's not just that he had prior violent felonies 19 years ago and then lived a law-abiding life for the last 20 years and then got into some trouble. It's not just that he got addicted to drugs late in life and had a series of drug-selling convictions just right up to the time where he was arrested in this offense. This man has barely held a job for most of his adult life. He's been arrested and in custody or under supervision for just about all of his adult life. How old was he at the time of this offense? He was about 40, 39 or 40 years old, and as the district court noted in sentencing him, it wasn't just that the defendant had these attempted murders at 19, but also that he had an assault when he was 29 years old, an assault conviction when he was 37, assault on a police officer and resisting arrest when he was 38. And so the district court noted that this defendant has not learned. He's not suffering from mistakes of his youth. He is, unfortunately, as the district court said, the definition of a career offender. The defendant also argues that statistics support his argument that a sentence of 10 years protects the public. The logic on that is, I believe, a bit strained. The defendant is arguing that a career offender, the recidivism rates for a career offender are about 70%. The recidivism rates for a person with a criminal history category 6 is about 75%. The recidivism rate for a career offender with violent priors is about 75%. And so the defendant argues, because he is very likely to re-offend anyways, we might as well give him the lower sentence. But really, what we ought to do is give him the higher sentence, because at least it incarcerates the defendant, and it incapacitates him, and it protects the community from him for another five or six years or whatever the difference would be. The bottom line is that the judge accurately calculated the guidelines in this case. The judge considered all of the relevant factors, both of the defendant's personal history, his criminal history, his characteristics, his terrible drug abuse. He did not consider any impermissible factors. The district court did not give too much weight to any particular factor. He didn't just say, look, I would otherwise sentence the defendant to something far less, but because he's a career offender, I'm going to have to sentence him within the range. In fact, what the district court said was, please tell me something good about your client. Tell me why I should give him a below-guideline sentence. Give me some reason to believe that this individual is not the danger that I believe him to be. And unfortunately, the defense counsel did her best, but there wasn't much in this case about Mr. Broome to give the judge any assurances that he would not continue to be a danger to the community. What was his best thought about why it should not be given such a sentence? Because the defendant had recently been renewing or rebuilding relationships with his family. And because he is now a 40-year-old man, and the statistics do show that offenders as they age become less likely to reoffend. But as the district court noted, he hadn't done that yet. He hadn't aged out of that criminal conduct at the age of 37, 38, 39. But that was his, I think, best argument for a below-guideline sentence. Lastly, I would say that the defendant talks about offending his client. And that the statistics of outside-the-guideline sentences are necessary for a district court to consider. And I would disagree. I think that the statistics as far as within and outside-the-guideline sentences are appropriate for the commission to consider and Congress in revising or creating guidelines. But the district court's job and what it has the institutional knowledge and the experience to do is to sentence an individual based on his or her criminal conduct and his or her history and characteristics. And the district court certainly did that in this case. He did not abuse his discretion, and we would ask that a sentence be affirmed. I'd like to just make a couple points. The first is that every single fact that the government recited about Mr. Broome's history, the circumstances of the offense, the type of drugs involved, the fact that there were guns, and his criminal history are all fully reflected in the ordinary guideline range under the drug guideline. Each of those facts is reflected by that guideline range. And there are a number of facts that make it necessary that the court must impose a career offender sentence, not based on those facts and not under the factors that you consider under 3553A, including his risk of recidivating in the future. The government suggests that if you have two guideline ranges, each of which correlate to approximately the same risk of recidivism, you should pick the longer one. That's the opposite of everything we know about how we treat criminal defendants, and it's the opposite of the parsimony clause right there in 3553A, which says that we are to impose a sentence that is sufficient but not greater than necessary. The government has not explained why the longer sentence is necessary to serve the purpose of protecting the public when the risks are the same. Well, the court sentenced him at the bottom of the enhanced guidelines, right? Yes. Two months difference. Yes. Isn't that what it was? It was at the low end, yes. Does your client know that if it goes back down, the court might even sentence him to a greater sentence? There might be something in his background that wasn't in the first one. It is true that if he were to get resentenced, that if there were some new information that came to the fore, the judge could definitely consider that and take it into account. So that is definitely a risk that he's taking. But in the circumstance of this case, and given what we know about Mr. Broome, we feel that it is unlikely that that would happen. And in fact, if the judge understood everything that we actually know about offenders like him, then it might come to a different conclusion. And this court has said repeatedly that when we talk about unwarranted disparity, we talk about national disparity, and district courts are supposed to be taking that into account when they address that factor. So it is simply not the case that it's irrelevant. It only has to do with what the commission does for its work. These statistics are the starting point, as this court said in stock, for determining whether a sentence creates unwarranted disparity. I also just want to turn to one other small thing, which is that Mr. Broome does not suggest that the government said anything false or untrue at the sentencing hearing. It's that the summary that it quotes in the commission's report on page 3 doesn't tell the story about offenders in criminal history category 6, and it doesn't tell the story about offenders in criminal history category 7. Most career offenders are not in criminal history category 6 already. And what the commission actually says is that career offenders who have committed a violent incident offense or prior violent offense generally have a more serious criminal history recidivate at a higher rate than other drug trafficking offenders. But what that means is just if we look at everything all together, that's how it looks. But when you go and look at people in criminal history category 6 already, the unusual type of career offender, their risk of committing crimes in the future and the seriousness of their offense is not different. For that reason, we ask that this course remand the case so that Mr. Broome can be resentenced based on a full account of what we know about offenders like him. Thank you. Okay. Thank you, Ms. Coffin and Ms. Day, for your arguments this morning. We certainly appreciate them.